HALLMARK CARDS, INC. *v.* Edward H. PEEVY

87-248                                          739 S.W.2d 691

Supreme Court of Arkansas
Opinion delivered November 23, 1987

*Norman Wilkinson,* for appellant.

*Martin, Vater, Karr & Hutchinson,* by: *W. Asa Hutchinson,* for appellee.

DAVID NEWBERN, Justice. The appellant, Hallmark Cards, Inc., sued the appellee, Edward H. Peevy, who had guaranteed an obligation owed to Hallmark by Garry Peevy. Both parties moved for summary judgment. Hallmark contended it was entitled to summary judgment on the basis of the verified account statement attached to its motion. Edward H. Peevy contended that the

amount due was disputed and, because Hallmark had sold the property pledged by Garry Peevy as security for the obligation without notifying Edward H. Peevy, Hallmark was not entitled to a deficiency judgment. Hallmark contended that Edward H. Peevy was not entitled to notice of the sale of the collateral. The central issue thus became whether notice of the sale of collateral to a guarantor was a necessary prerequisite to seeking a deficiency judgment against the guarantor. The summary judgment motion of Edward H. Peevy was granted. As we agree that the notice was necessary, the judgment is affirmed to the extent the obligation to Hallmark was clearly covered by the security agreement pursuant to which the collateral was pledged. We must reverse and remand, however, as to that portion of the obligation which was not clearly covered by the security agreement.

Hallmark's complaint alleged that Garry Peevy owed it $38,899.81, plus $812.61 he had agreed to pay to Heartline, Inc., a subsidiary of Hallmark, and that Edward H. Peevy was liable for the debt because of a guaranty agreement he had executed. Exhibits filed with the complaint showed that the larger of the two amounts was comprised of overdue balances on two separate accounts Garry Peevy had with Hallmark. One of these two accounts was labeled "Open Fixture Balance," and the other was labeled "Open Account Balance." Edward H. Peevy's answer was a general denial.

In response to requests for admission, Edward H. Peevy admitted the "genuineness" of the guaranty agreement and of his signature upon it. An interrogatory posed by Edward H. Peevy asked Hallmark if it had "any collateral pledged on the fixture account?" The answer was that Peevy Enterprises, Garry Peevy's company, had "granted Hallmark a security interest in trade fixtures, card racks, related equipment and proceeds therefrom pursuant to a Security Agreement dated September 3, 1981." In response to further interrogatories, Hallmark stated it had sold those items at a private sale, for $18,200 which it had credited to Garry Peevy's account and that, although Garry Peevy had been notified of the sale by telephone, no written notice had been given to either Garry Peevy or Edward H. Peevy.

Responding to Edward H. Peevy's motion for summary

judgment, Hallmark contended that only the "fixture account," in the amount of $21,991.25, was secured by the collateral, and that the "open account" balance of $17,721.16 was not affected by any decision whether notice of the sale was given or required. The trial court denied Hallmark's motion for summary judgment, and granted Edward H. Peevy's motion for summary judgment "on the entire amount sued for."

### 1. Notice required

■■ The notice requirement with which we are concerned here is stated in the relevant part of Ark. Stat. Ann. § 85-9-504(3) as follows: ". . . reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . ." Hallmark argues Edward H. Peevy was not a "debtor" and thus was not entitled to notice. "Debtor" is defined by Ark. Stat. Ann. § 85-9-105(1)(d) as:

> . . . the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the Article [chapter] dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

In *Norton* v. *National Bank of Commerce of Pine Bluff*, 240 Ark. 143, 398 S.W.2d 538 (1966), we were confronted with similar facts. A car dealer took a note and conditional sales contract from a buyer and assigned it to the bank, promising that in the event of default the dealer would repurchase the note and contract for the amount due. Upon default by the buyer, the bank sold the car without notice to the dealer. We held that the dealer was a "debtor" entitled to notice pursuant to the statute and as a matter of simple fairness. In discussing the statute, we noted that the dealer was one who, in the terminology of § 85-9-105(1)(d), owed "other performance" of the obligation. Although the dealer was not a party to an agreement specifically called a "guaranty agreement" in the *Norton* case, his obligation pursuant to the assignment agreement with the bank was like that of a guarantor,

and we see little distinction between that situation and the one before us now.

■ Other jurisdictions have held, virtually unanimously, that a guarantor is a debtor for purposes of the notice requirement. The cases are collected in Annot., 5 A.L.R. 4th 1291 (1981). We hold here, as we did in the *Norton* case, that simple fairness requires that the term "debtor" to whom notice is required include one who is responsible for payment upon default of the principal obligor.

## 2. Effect of lack of notice

In the *Norton* case, after reaching the conclusion that the dealer was a debtor and entitled to notice of the sale of the collateral, we considered the effect of the failure to provide notice. We held that the obligation of the dealer was not necessarily extinguished, but that the secured party who had wrongfully sold the collateral without giving notice to the dealer would have the burden of proving the extent to which the sale of the collateral should be regarded as having extinguished the obligation. In other words, we said the presumption would be that the collateral was worth the same as the obligation, and the bank would have the burden of showing any difference.

■ In *First State Bank of Morrilton v. Hallett*, 291 Ark. 37, 722 S.W.2d 555 (1986), after thoroughly considering the matter, we overruled that portion of the *Norton* decision which would have permitted the secured party to recover a deficiency upon overcoming the presumption that the collateral was worth at least as much as the amount of the obligation. We held clearly that the right to any deficiency judgment was dependent upon the secured party having complied with the notice requirement. Hallmark asks that we overrule our decision and return to the position we took in the *Norton* case. No argument is made here that was not considered in reaching our decision in the *Hallett* case, and we decline to overrule it. Our holding here is that a secured party who has failed to comply with the requirement that a debtor be notified of the sale of collateral may not recover the deficiency established between the sale price and the obligation owed to the creditor by the debtor.

### 3. Separate accounts

■ In considering a motion for summary judgment, a judge may consider pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to summary judgment. Ark. R. Civ. P. 56(c). The only basis for Edward H. Peevy's motion for summary judgment was his contention that the indebtedness to Hallmark he had guaranteed was secured by collateral which had been sold without notice to him, thus barring Hallmark from obtaining a deficiency judgment. There is no doubt he had guaranteed the entire indebtedness of Garry Peevy to Hallmark; however, there is doubt as to the extent to which that indebtedness was secured by the collateral which was sold without notice to him. While the complaint filed by Hallmark stated only that Edward H. Peevy was liable under the guaranty agreement for $38,899.81 and $812.61, without dividing the larger figure into "fixture" and "open account" portions, the documents attached to the complaint and referred to in it clearly showed the two balances comprising the larger figure and referred to them as separate accounts.

The factual underpinning for Edward H. Peevy's motion was Hallmark's response to this question: "Did the Plaintiff [Hallmark] have any collateral pledged *on the fixture account*?" (Emphasis supplied.) The response was: "Peevy Enterprises granted Hallmark a security interest in trade fixtures, card racks, related equipment and proceeds therefrom pursuant to a Security Agreement dated September 3, 1981." Hallmark thus has not admitted that there was collateral pledged with respect to anything other than the "fixture account." The security agreement to which Hallmark's answer to the interrogatory referred is not in the record before us. We have no idea whether the collateral was pledged only on the "Open Fixture Balance" portion of the indebtedness or secured all indebtedness of Garry Peevy to Hallmark.

■ At least a partial summary judgment was appropriate in this case. *See* Ark. R. Civ. P. 56(d). However, the answer to the interrogatory on which Edward H. Peevy based his motion for summary judgment was a sufficient basis only with respect to

establishing that Hallmark was not entitled to judgment with respect to the so-called "fixture account." It remains to be seen upon remand whether the security agreement extended beyond that account by pledging the collateral for all indebtedness of Garry Peevy to Hallmark.

### 4. Hallmark's motion

Hallmark contends that its motion for summary judgment should have been granted. In response to Hallmark's motion, Edward H. Peevy contended that the account balances stated in the complaint were incorrect. Attached to his response to Hallmark's summary judgment motion were two letters from an attorney representing Garry Peevy stating that Garry Peevy questioned the amount stated as the "fixture" account balance.

The decision that Edward H. Peevy was entitled to summary judgment with respect to the entire amount owed by Garry Peevy to Hallmark made it unnecessary to decide Hallmark's motion, although the trial court did so and denied it. If it is determined upon remand that Edward H. Peevy had guaranteed payment of an obligation of Garry Peevy which was not secured by the collateral sold without notice to Edward H. Peevy, the question may again arise whether Hallmark is entitled to summary judgment on an obligation not included in the security agreement. The trial court can then decide whether there is any remaining issue of fact in that respect.

We affirm the judgment to the extent of holding that Hallmark is not entitled to a deficiency judgment with respect to the difference between the $18,200 it received upon sale of the fixtures and the balance of the fixture account, $21,991.25, which Hallmark stated was secured by the security agreement. We reverse the judgment to the extent it precluded Hallmark from proving its entitlement to recover on any account or amount not clearly covered by the security agreement and thus not clearly extinguished by the sale of the collateral without notice.

Affirmed in part, reversed in part, and remanded.

HAYS and GLAZE, JJ., dissent.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. In order to prevent a misapprehension that we have not properly researched the subject, I point out that the Court is aware of *Rhodes* v. *Oaklawn Bank*, 279 Ark. 51, 648 S.W.2d 470 (1983), in which we effectively overruled *Norton* v. *National Bank of Commerce of Pine Bluff*, 240 Ark. 143, 398 S.W.2d 538 (1966), and was the basis for the decision in *First State Bank of Morrilton* v. *Hallett*, 291 Ark. 37, 722 S.W.2d 555 (1987).

TOM GLAZE, Justice, dissenting. I dissent for the same reasons I did in *First State Bank* v. *Hallett*, 291 Ark. 37, 722 S.W.2d 555 (1987). Here, appellant asks this court to overrule our recent holding in *Hallett* and to return to Arkansas's long established *Norton* rule, which I view as one that was fair both to the debtor and secured creditor. The *Hallett* decision is a punitive one directed towards secured creditors. In my view, *Hallett* is a clear mistake by this court, and should be given a short life.

HAYS, J., joins in this dissent.