The FIRST NATIONAL BANK OF WYNNE *v.* Bobby HESS

CA 87-276                                    743 S.W.2d 825

Court of Appeals of Arkansas
Division I
Opinion delivered February 3, 1988
[Rehearing denied March 2, 1988.]

*Shaver, Shaver & Smith,* by: *Tom B. Smith,* for appellant.

*Killough, Ford & Hunter,* by: *Robert M. Ford,* for appellee.

BETH GLADDEN COULSON, Judge. Appellant raises five points for reversal in this appeal. We find none of the arguments persuasive, and we accordingly affirm the judgment of the trial court.

On October 17, 1984, appellant, the First National Bank of Wynne, loaned $45,006 to JART Enterprises, Inc., a business entity consisting of Jim Foley and Theresa Foley. Appellant required for the loan the personal guaranty of appellee, Bobby Hess, who executed a guaranty agreement on the date of the loan.

The money loaned to JART Enterprises was used to operate a convenience store through a sublease from Mid-South Sales

Company. Appellant, in a security agreement filed on October 24, 1984, with the Secretary of State, acquired a security interest in the inventory, valued by appellant at $22,000, and the furniture and fixtures valued at $16,800. Subsequently, JART Enterprises became delinquent on the note and filed for a Chapter 11 bankruptcy on June 3, 1985.

The Bankruptcy Court terminated JART Enterprises' leasehold interest in the store building and awarded possession of the premises, including inventory, furniture, and fixtures, to Mid-South Sales, subject to appellant's security interest. Pursuant to an agreement with appellant, Mid-South Sales went into possession of the building on October 9, 1985, and began operating the store, selling the inventory. On January 2, 1986, Mid-South purchased the inventory, furniture, and fixtures for $15,000. Appellant applied the proceeds to the debt and sought to hold appellee liable for a deficiency of $30,009.

At trial, appellant moved for summary judgment, arguing that appellee was unconditionally liable on the basis of the independent Guaranty Agreement. The trial court denied the motion. Appellee defended on the grounds of improper notice and commercial unreasonableness under Ark. Stat. Ann. § 85-9-504(3) (Supp. 1985). The trial judge determined that the issues properly before the court were whether a guarantor was a "debtor" within the meaning of Ark. Stat. Ann. § 85-9-504(3) and whether appellant had complied with the requirements of notice and commercial reasonableness. At the end of its case, appellant moved for a directed verdict, contending that a guarantor is not a debtor and that the section dealing with the disposition of collateral in a commercially reasonable manner does not apply. The motion was denied, and the jury returned a verdict in favor of appellee. From that judgment, this appeal arises.

In its first point for reversal, appellant argues that the trial court erred in denying the motions for summary judgment, directed verdict, and judgment notwithstanding the verdict. This argument, the keystone of appellant's case, both at trial and on appeal, focuses on the issues highlighted by the trial court: the status of the guarantor under Ark. Stat. Ann. § 85-9-504(3) and the question of commercial reasonableness.

Ark. Stat. Ann. § 85-9-504(3) (Supp. 1985) provides that:

Disposition of the collateral may be by public or private proceedings, and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods, no other notification need be sent. In other cases, notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale.

Appellant contends that appellee, having voluntarily signed the Guaranty Agreement on October 17, 1984, unconditionally guaranteed to pay the amount due on the obligation of JART Enterprises upon default. According to appellant, by the terms of the Guaranty Agreement, appellee waived any notice requirements. Hence, appellant says, the provisions of the Uniform Commercial Code governing commercially reasonable transactions are inapplicable.

Appellee responds that a proper reading of the statutes indicates that a guarantor is a "debtor" under the Uniform Commercial Code, and that the appropriate provisions automatically come into play. A "debtor" in a secured transaction is defined at Ark. Stat. Ann. § 85-9-105 (Supp. 1985) as:

The person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel

paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the Article [chapter] dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

A guarantor is clearly one who "owes payment or other performance of the obligation secured." Under the terms of the Guaranty Agreement in the present case, appellee, who was not the "owner of the collateral," was certainly the "obligor in any provision dealing with the obligation." Although the Guaranty Agreement contained a boilerplate clause waiving "any and all notice of nonpayment and dishonor, demand, notice, protest and notice of protest, and . . . notice of the acceptance of this guaranty," the obligations outlined in the instrument place appellee in the position of a debtor for purposes of the notice requirement.

In *Hallmark Cards, Inc.* v. *Peevy*, 293 Ark. 594, 598, 739 S.W.2d 691, 693 (1987), the Arkansas Supreme Court held, in an appeal involving a guarantor, that "simple fairness requires that the term 'debtor' to whom notice is required include one who is responsible for payment upon default of the principal obligor." This policy, endorsed in other jurisdictions, *see* Annot., 5 A.L.R. 4th 1291 (1981), was set forth by the Supreme Court in an earlier Uniform Commercial Code case, *Norton* v. *National Bank of Commerce of Pine Bluff*, 240 Ark. 143, 398 S.W.2d 538 (1966). In *Norton*, an automobile dealer, after selling a used car, sold the purchaser's note and conditional sales contract to a bank and agreed to repurchase the contract for the amount due in the event of the purchaser's default. The Supreme Court held that he was a "debtor" within the meaning of Ark. Stat. Ann. § 85-9-504(3) and was therefore entitled to notice, after the bank had repossessed the automobile, of the bank's proposed private sale of the vehicle. Discussing *Norton* in *Hallmark Cards, Inc.* v. *Peevy, supra*, the court noted that "Although the dealer was not a party to an agreement specifically called a 'guaranty agreement' in the *Norton* case, his obligation pursuant to the assignment agreement with the bank was like that of a guarantor, and we see little distinction between that situation and the one before us now." 293 Ark. at 597-598, 739 S.W.2d at 693.

■ Indeed, there is little to distinguish between the situation in the *Peevy* case and the one before this court. The appellant there, Hallmark Cards, Inc., sued the appellee, Edward H. Peevy, who had guaranteed an obligation owed the appellant by Garry Peevy. The appellee contended that the amount due was disputed and that, because the appellant had sold the property pledged by Garry Peevy as security for the obligation without notifying the guarantor, the appellant was not entitled to a deficiency judgment. The Supreme Court concluded that notice to a guarantor of the sale of collateral was a necessary prerequisite to seeking a deficiency judgment against the guarantor because, as noted above, a guarantor is a debtor for purposes of the notice requirement of Ark. Stat. Ann. § 85-9-504(3).

■ The Arkansas Supreme Court stated in *First State Bank of Morrilton* v. *Hallett*, 291 Ark. 37, 41, 722 S.W.2d 555, 557 (1986), that "When the code provisions have delineated the guidelines and procedures governing statutorily created liability, then those requirements must be consistently adhered to when that liability is determined." In other words, as the court put it in quoting *Atlas Thrift Co.* v. *Horan*, 27 Cal. App. 3d 999, 104 Cal. Rptr. 315 (1972), "If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." 291 Ark. at 41, 722 S.W.2d at 557. Thus, failure to comply with Code provisions concerning notice to debtors and disposition of collateral results in a bar to recovery of a deficiency judgment.

At trial, appellee testified that Mid-South Sales took possession of the premises of the convenience store on October 9, 1985. He added that he received no notice that JART Enterprises was in default on the note until November 4, 1985. The notice, however, did not include information that Mid-South Sales was in possession of the premises and operating the store using secured inventory. Appellee testified that he did not learn that Mid-South Sales was in possession of the store until a meeting held on November 25, 1985. Written notice was sent by appellant's attorney on December 24, 1985, over two months after Mid-South Sales went into possession of the collateral.

■ Appellant's disposition of the collateral does not satisfy the requirement of Ark. Stat. Ann. § 85-9-504(3) (Supp. 1985)

that "every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." The inventory of the collateral was taken by three representatives of Mid-South Sales in November, 1985, over a month after the company took possession. There was no arrangement between appellant and Mid-South Sales to account for the collateral sold, a circumstance resulting in impairment of the collateral. No effort was made on appellant's part to investigate an offer made by a former owner of the store to purchase the collateral for $30,000. Appellant never advertised the collateral for sale. The record reveals that the collateral was valued at $38,000 for loan purposes, yet was sold for $15,000 when the inventory alone was valued at $16,000. Such recklessness cannot be termed "commercially reasonable."

■■ Summary judgment is an extreme remedy and will be granted only when there is no genuine issue of material fact before the court. *Township Builders, Inc.* v. *Kraus Construction Co.*, 286 Ark. 487, 696 S.W.2d 308 (1985). The burden of proving that there is no genuine issue of material fact is upon the moving party. All proof submitted must be viewed in the light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Leigh Winham, Inc.* v. *Reynolds Insurance Agency*, 279 Ark. 317, 651 S.W.2d 74 (1983). The record in the present case indicates the existence of a genuine issue of material fact, and the trial court ruled correctly in denying appellant's motion.

■■ A trial court has a duty, when requested to render a directed verdict, to consider whether the evidence against the party toward whom the verdict is directed, when given its strongest probative force, presents a *prima facie* case; only if the evidence viewed in that light would require the setting aside of a jury verdict should a trial court grant a directed verdict. *Camp* v. *First Federal Savings & Loan*, 122 Ark. App. 150, 671 S.W.2d 213 (1984). The facts set forth in the record do not establish a *prima facie* case against appellee; therefore, we find that the trial court ruled correctly in denying appellant's motion.

■ As for appellant's contention that the court should have entered a judgment notwithstanding the verdict, it is well settled that a trial court may enter a judgment *non obstante veredicto*

only if there was no substantial evidence to support the jury verdict. *Crail* v. *Northwestern National Insurance Co.*, 282 Ark. 175, 666 S.W.2d 706 (1984). We believe the record indicates substantial evidence to support the verdict.

Appellant argues, in its second point for reversal, that the trial court erred in refusing to admit a United States Bankruptcy Court order dated October 8, 1985, and signed November 12, 1985, into evidence. The order gave possession of the business operated by JART Enterprises to Mid-South Sales, subject to appellant's interest in the inventory, fixtures, and furniture. Appellant contends that the order had a direct bearing on the bank's right to the property and was admissible under Rules 901(b)(7) and 1005 of the Arkansas Uniform Rules of Evidence.

Because notice was an issue at trial, reference was made by appellee's attorney to the date on the order in order to refresh a witness's memory regarding the date on which Mid-South Sales assumed possession of the collateral. No other questions relating to the content of the document were raised. Because the content of the order had been discussed in testimony, there was no need to admit a redundant document into evidence. Moreover, the probative value of the order to the issue at trial would have been substantially outweighed by the confusion of issues which would have resulted from its introduction. Arkansas Uniform Rules of Evidence, Rules 401 and 403.

Appellant's third point for reversal is that the trial court erred in refusing to give seven of its proposed jury instructions. These instructions were based on appellant's trial strategy that attempted to hold appellee absolutely liable on the Guaranty Agreement with no reference to the provisions of the Uniform Commercial Code. Our holding that appellee was a debtor within the meaning of the Code disposes of this issue.

Similarly, appellant's fourth point, alleging error in the trial court's decision to give appellee's instructions based on the argument that a guarantor is a debtor, is also decided in favor of appellee on the basis of our earlier holding that the Uniform Commercial Code definitions apply in the present case.

Finally, appellant argues, in its fifth point for reversal, that appellee was negligent and responsible for his own loss in having

failed to inquire into the financial health of the business he was insuring. This argument, however, amounts to nothing more than editorializing. The issue is not framed in terms to which this court can respond, as it does not address itself to any ruling by the trial court for which there exists an appellate remedy.

Affirmed.

CRACRAFT and MAYFIELD, JJ., agree.