[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 514.]

AMERICAN SEAWAY FOODS, INC., APPELLANT, *v*. BELDEN SOUTH ASSOCIATES

LIMITED PARTNERSHIP, APPELLEE.

[Cite as *Am. Seaway Foods, Inc. v. Belden S. Assoc. L.P.*, 1995-Ohio-59.]

*A guarantor is a "debtor" within the meaning of R.C. 1309.01(A)(4), and is*

*therefore entitled under R.C. 1309.47(C) to notice of the sale of collateral.*

(No. 94-767—Submitted April 19, 1995—Decided July 26,1995.)

CERTIFIED by the Court of Appeals for Stark County, No. 9260.

———————————

{¶ 1} Appellant, American Seaway Foods, Inc. ("Seaway"), is a wholesale distributor of foods and related merchandise to various retail grocery establishments. Appellee, Belden South Associates Limited Partnership ("Belden"), is the owner and landlord of a shopping center, which includes a supermarket and certain supermarket equipment in Canton, Ohio. In September 1991, Belden leased a portion of the shopping center to R.W.F., Inc. ("RWF") to operate a retail grocery store. Subsequently, Seaway began supplying food and merchandise inventory to RWF.

{¶ 2} In November 1991, RWF executed a Cognovit Promissory Note with Seaway in the amount of $400,000 and a Security Agreement, whereby Seaway retained a security interest in substantially all of RWF's assets, including its food inventory. On the same day, to induce Seaway to provide inventory on credit to RWF, Belden executed a Nonrecourse Guaranty and Security Agreement ("Guaranty Agreement") with Seaway, wherein Belden guaranteed the prompt payment and performance of all the obligations owed by RWF to Seaway.[1] Under

---

1. Belden's Guaranty Agreement with Seaway provided:

"2. Except [for the twenty-four-hour cure provision], Creditor shall not be required, as a condition to the liability of Guarantor, to make any demand upon, or to pursue any of its rights against, Guarantor, any other person responsible for the payment of all or part of any Obligation, or

the agreement, Belden had the option to either cure a default by RWF or surrender the "Guarantor Collateral,"[2] which included the RWF inventory, the Belden supermarket equipment, and all fixtures, within twenty-four hours of Seaway's demand following default. Furthermore, Belden expressly waived notice of Seaway's disposition of the Guarantor Collateral.[3]

---

any other person or to pursue any rights which may be available to it under any document other than this Guaranty or with respect to any other person who may be liable for the payment of any indebtedness or for the performance of any other obligation of Guarantor to Creditor.
"***
"7. This is a guaranty of payment and performance and not a guaranty of collection; provided, however, that the obligations of Guarantor hereunder shall be limited to the surrender, within 24 hours of Creditor's demand, of the Guarantor Collateral (as hereinafter defined) and the Collateral, as defined in the Security Agreement, in the event of any default with respect to the Obligations, or any of them. ***"

2. The Guaranty Agreement defines the property included as "Guarantor Collateral" as:
"a. All inventory (as defined in the Uniform Commercial Code) used by Tenant in its business now or hereafter located at 4645 Fulton Road, Canton, Ohio 44718-2333 (such location being referred to herein as the 'Premises'), all goods, merchandise, products and commodities acquired, manufactured or processed by Tenant and intended for sale, and all raw materials, goods in process, finished goods, all materials and supplies of every material used or usable in connection with such manufacture, processing, packaging, shipping and sale of products, whether now owned or hereafter acquired by Tenant or Guarantor.
"b. All equipment (as defined in the Uniform Commercial Code), whether now or hereafter owned by the Tenant or Guarantor which is now or hereafter located at the Premises.
"c. All fixtures (as such term is described in the Uniform Commercial Code), whether now or hereafter owned by the Tenant, and all trade fixtures whether now or hereafter owned by Tenant or Guarantor, which, in either case, is now or hereafter located at the Premises.
"The parties intend that said Collateral shall secure the payment or the performance of the Obligations as defined in the Security Agreement."

3. "In consideration of creditor's extension of credit to tenant, and with the express understanding that without the special waivers and covenants herein contained, said extension of credit would not be made and continued, guarantor hereby agrees that in the event of a default by tenant which is not timely cured, guarantor hereby specifically and knowingly waives, except as otherwise provided in section 7 hereof, all rights to any notice prior to creditor's exercise of any of its rights hereunder or with respect to the guarantor collateral, including, without limitation, the entry of an order in any court proceeding which shall have the effect of foreclosing upon or replenishing the guarantor collateral. Guarantor expressly and knowingly waives any notice to any hearing on any such final order. it is expressly agreed that creditor shall have the right, in addition to those rights under the uniform commercial code, to sell the guarantor collateral held by guarantor at a private sale to satisfy the obligations due and payable."

**{¶ 3}** In early March 1992, the store operated by RWF failed. Seaway took possession of the supermarket to repossess and dispose of the inventory, and notified Belden that RWF was in default. In total, RWF had three accounts in default with Seaway for approximately $683,000: the guaranteed Note Account with principal and interest payments due of approximately $399,000, an open Line of Credit Account with principal and interest due of $272,289.67, and an Engineering Account with an unpaid balance of $11,613.89. Only the Note Account, which was later reduced to $381,065.09 outstanding, involves the collateral at issue in this appeal.

**{¶ 4}** Belden did not cure the default or relinquish the collateral. An independent auditing service determined the retail value of the RWF inventory to be $356,586.31, of which $53,398.86 of inventory was perishable food. Although a Belden's representative was present during the auditing, Seaway failed to give Belden notice of its intention to sell the collateral. Seaway diligently tried, for one day, to find other retailers to buy the inventory. On March 9, 1992, however, Seaway sold all the RWF inventory, both perishable and nonperishable alike, in a commercially unreasonable private sale for $142,634 to various retail subsidiaries of Seaway's parent corporation. In addition, Seaway demanded that Belden surrender the supermarket equipment, which was valued at $359,000. When Belden refused, Seaway obtained an emergency order of possession of the Belden equipment and posted the required replevin bond. Although Belden later consented to a partial sale of the equipment for $43,000, Belden counterclaimed for conversion, trespass, breach of lease, and abuse of process, rent and right to proceed against Seaway's bond. After initially granting Seaway possession of the Belden equipment, the trial court's final judgment found in favor of Belden on Seaway's replevin complaint and exonerated Seaway on Belden's counterclaims.

**{¶ 5}** The court of appeals affirmed in part the trial court's judgment, holding that Belden was a "debtor" as defined in R.C. 1309.01(A)(4) and that

pursuant to R.C. 1309.47(C) Belden had a right to notice of the sale of the RWF inventory and the right to a commercially reasonable disposition of the RWF inventory, neither of which could be waived pursuant to R.C. 1309.44(C). The court of appeals reversed in part the trial court's judgment and remanded, holding that, pursuant to R.C 2737.10, Belden had the right to elect to receive the value of the Belden equipment or the replevin bond posted by Seaway. Finding its decision on the issue of guarantor's rights to be in conflict with the decision of the Ninth District Court of Appeals in *E. F. Hutton Credit Corp. v. Yarborough Leasing Co.* (Sept. 14, 1983), Summit App. No. 11136, unreported, 1983 WL 4215, the court of appeals certified the record of the case to this court for review and final determination.

————————————

*Benesch, Friedlander, Coplan & Aronoff, David W. Mellott, David W. Neel* and *N. Victor Goodman*, for appellant.

*Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A.,* and *M. Colette Gibbons*, for appellee.

————————————

**MOYER, C.J.**

{¶ 6} The sole issue certified to this court is whether a guarantor may waive, pursuant to R.C. 1309.44(C) and 1309.01(A)(4), the defenses to a deficiency judgment available under R.C. 1309.47(C) with respect to a private sale of collateral owned by a debtor.  For the reasons that follow, we answer that question in the negative.

{¶ 7} R.C 1309.47(C), which governs a secured party's right to dispose of collateral after default, provides:

"*** Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after

4

which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale. ***"

{¶ 8} Prior to its amendment, and at all relevant times to the instant case, compliance with the notice-of-sale requirement of R.C. 1309.47(C) was a condition precedent to a secured party's recovering any deficiency judgment. Failure by the secured party to provide the debtor with reasonable notice of the sale of collateral created an "absolute bar" to the deficiency. *Kruse v. Voyager Ins. Cos.* (1995), 72 Ohio St.3d 192, 197, 648 N.E.2d 814, 817-818. The central purpose underlying this section is to provide all persons having an interest in the collateral with notice of the disposition of the collateral in order that they will have an opportunity to bid at the sale or otherwise take measures to reduce their potential liability in the event of a deficiency.

{¶ 9} Furthermore, in addition to the debtor's rights and the creditor's duties set out in R.C. 1309.47(C), R.C. 1309.44(C) protects a debtor's right to notice of the collateral disposition by even prohibiting the debtor from waiving the right to notice prior to default.[4]

{¶ 10} Seaway argues that with regard to the RWF inventory, Belden, as a guarantor, is not a debtor, and therefore is not entitled to notice of the sale of the collateral. Seaway argues that because Belden is only a guarantor, R.C. 1309.44(C) does not prohibit Belden from entering a pre-default waiver of notice. The

---

4. R.C. 1309.44(C) provides:

"To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the code references below may not be waived or varied except as provided with respect to compulsory disposition of collateral as provided in division (C) of section 1309.47 or division (A) of section 1309.48 of the Revised Code and with respect to redemption to collateral as provided in section 1309.49 of the Revised Code, but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable[.]"

determinative legal issue then is whether under R.C. Chapter 1309 a guarantor can be a debtor.

**{¶ 11}** R.C. 1309.01(A)(4) defines a "debtor" as "the person who *owes payment or other performance* of the obligations secured, *whether or not he owns or has rights in the collateral*, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, *the term 'debtor' means* the owner of the collateral in any provision of sections 1309.01 to 1309.50 of the Revised Code dealing with the collateral, *the obligor in any provision dealing with the obligation and may include both where the context so requires.*" (Emphasis added.)

**{¶ 12}** It is clear that under the first sentence of R.C. 1309.01(A)(4), Belden is a "debtor." Although Belden did not own the RWF inventory, Belden unconditionally guaranteed RWF's debt and specifically owed "payment or other performance" to Seaway pursuant to the Guaranty Agreement. Under the agreement, Seaway needed only to look to Belden for satisfaction of the obligation.

**{¶ 13}** Belden falls within the second sentence of the statute, as well. R.C. 1309.44(C) and 1309.47(C) are both "provision[s] of sections 1309.01 to 1309.50 *** dealing with the obligation ***" to which Belden was the obligor. Thus, the mere fact that Belden was not the owner of the RWF inventory does not exclude Belden from the definition of "debtor" under R.C. 1309.01(A)(4). Moreover, Belden did own the supermarket equipment included in the Guaranty Agreement definition of the "Guarantor Collateral," and pledged to secure RWF's debt. Thus, Belden satisfies the entire second sentence of R.C. 1309.01(A)(4), by being both an "owner" and "obligor" whose obligation to Seaway is tied inextricably to the sale of the RWF inventory.

**{¶ 14}** An excellent statement for rationale supporting our conclusion is found in 2 White & Summers, Uniform Commercial Code (3 Ed.1988) 604, Section 27-12:

"'Guarantors' and 'sellers' of chattel paper with recourse have a financial stake in the creditor's disposition or sale of the collateral that is identical to the debtors' interest--liability for a deficiency. Consequently, these parties deserve the same notice protection that the Code gives the debtor, at least where the secured party has knowledge of the non-owner debtor's potential liability if the primary debtor defaults. ***"

{¶ 15} Nearly all courts that have addressed this issue have deemed a guarantor to be a debtor for purposes of state commercial code provisions requiring notice and prohibiting waiver of defenses. Annotation (1981), 5 A.L.R. 4th 1291. The majority rule that has emerged recognizes that the interests of guarantors and debtors on matters affecting the disposition of collateral are so similar that "simple fairness requires that the term 'debtor' to whom notice is required include one who is responsible for payment upon default of the principal obligor." *Hallmark Cards, Inc. v. Peevy* (Ark. 1987), 739 S.W.2d 691, 693.

{¶ 16} In addition, holding that a guarantor is a "debtor" within the meaning of R.C. 1309.01(A)(4) and entitled to notice of the sale of the collateral is consistent with the underlying purpose of R.C. 1309.47(C) discussed previously—to give all persons with an interest in the collateral notice of the disposition. A guarantor is liable for any deficiency remaining after the sale of the collateral and, as such, has a substantial interest in achieving the best possible disposition of the collateral. Allowing a secured party to disregard the guarantor's interest could encourage a hasty and commercially unreasonable sale at the convenience of the creditor, because the creditor would be secure in the knowledge that the guarantor would cover the deficiency. This is precisely what the notice requirement of R.C. 1309.47(C) seeks to prevent.

{¶ 17} In view of the above, we hold that a guarantor is a "debtor" within the meaning of R.C. 1309.01(A)(4), and is therefore entitled under R.C. 1309.47(C) to notice of the sale of collateral. Consequently, R.C. 1309.44(C) prohibits a

guarantor from waiving or varying the notice requirement until after default.  It follows that Belden's pre-default waiver of notice is unenforceable.  Seaway's failure to provide Belden with notice of the sale of the RWF inventory prevents Seaway from looking to Belden to satisfy the deficiency.

{¶ 18} For the foregoing reasons we affirm the judgment of the court of appeals.

*Judgment affirmed.*

WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., dissents.

_____