**In re William T. DARLING, and C. Ann Darling, Debtors.**

**Bankruptcy No. 94–00248–9P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 30, 1997.

William T. Darling, C. Ann Darling, Naples, FL, pro se.

Louis X. Amato, Naples, FL, Previous Attorney to Debtors.

U.S. Trustee, Tampa, FL.

Mark H. Muller, Naples, FL, for Barnett Bank of Naples.

### ORDER ON OBJECTION TO CLAIM # 17/BARNETT BANK OF NAPLES and AMENDED PROOF OF CLAIM # 44

Alexander L. PASKAY, Chief Judge.

This is a confirmed Chapter 11 case and the matter under consideration is an Objection to Claim # 17/Barnett Bank of Naples filed by William T. Darling and C. Ann Darling, the Debtors (Debtors). Claim # 17 is a deficiency claim filed by Barnett Bank of Naples (Barnett), which involves the sale of a yacht previously owned by the Debtors. A brief synopsis of the relevant facts involved in this dispute are as follows:

On March 10, 1994, Barnett originally filed an unsecured claim in the amount of $111,-565.74. On November 27, 1995, the Debtors filed an Objection to the claim and challenged the allowance on the grounds that "the claim

failed to establish that the collateral was liquidated in a commercially reasonable manner." On February 14, 1996, this Court entered an Order that deferred consideration of the Debtor's Objection and scheduled the Objection for a final evidentiary hearing to be held on April 18, 1996.

On March 7, 1996, Barnett filed an Amended Proof of Claim # 44 in the same amount as the original claim # 17. The Amended Proof of Claim stated that "[t]he Debtors voluntarily relinquished the boat" and that the amounts owed by the Debtors "represents the difference between the fair market value of the collateral on the day of Barnett's repossession of the property and the amount owed by the Debtors to Barnett under the terms of the promissory note."

On June 7, 1996, the final evidentiary hearing was held and this Court took the matter under advisement. On June 17, 1996, after the conclusion of the final evidentiary hearing, the Debtors filed a Motion to Reopen Case (sic) or Alternatively, to Amend, although the case had not been closed. Nevertheless, the Debtors, in the Motion to Reopen or Amend, contend that this Court should consider Barnett's Amended Proof of Claim # 44 even though it was filed after the Debtors filed the Objection to the original claim. The Motion was heard and on August 18, 1996, this Court entered an Order granting the Motion.

The facts relevant to the Objection to the allowance of the unsecured claim of Barnett are in large measure without dispute, albeit with some notable exceptions. On August 11, 1990, Barnett loaned $172,000.00 to Stone Harbor Seafood, Inc. In return, Mr. Darling as president of Stone Harbor Seafood, Inc., executed a Promissory Note in the principal amount of the loan. Both Debtors signed the Note individually. As collateral for the Note, Barnett placed a lien on a yacht identified as a 1972 45′ Hatteras f/b Convertible Sedan Fisherman Hull # 45C–438 Port Engine Model # 8063–7300. The Note fully documented all essential parts of the yacht with the appropriate identification numbers. There is no question that Barnett had a valid enforceable security interest in the yacht. It is equally without dispute that the loan was

in default and that Barnett filed a foreclosure suit in the 20th Judicial Circuit in and for Collier County. Furthermore, the record reveals that Barnett liquidated its collateral and credited the Debtors with the proceeds of the sale, less the cost of liquidation.

The dispute under consideration centers around the manner in which Barnett sold the yacht. In particular, did Barnett comply with the governing provisions of the Uniform Commercial Code (UCC) in dealing with the disposition of its collateral, in this instance, the yacht? Florida Statute § 679.504(3) provides that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." The Statute further provides that

> "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a conspicuous statement renouncing or modifying his right to notification of the sale."

It is not contested that neither Mrs. Darling nor Mr. Darling, the co-obligors on the Note, did not receive any notification of the sale. Mr. Darling was merely requested by Barnett to sign the Bill of Sale as required by the Coast Guard in order to transfer the title of the yacht to the purchaser.

The purpose of requiring the secured party to notify the debtor of the time and place of the proposed sale of the collateral is to give the debtor an opportunity to make sure that the sale is conducted at arms length and to minimize the possible deficiency claim by obtaining a higher bid for the collateral. Obviously, a notice given after the sale of the collateral would not serve this purpose. It would be meaningless and of no benefit to the debtor. This record amply supports the conclusion that the sale of the yacht was not conducted in a commercially reasonable manner due to the lack of proper notification by Barnett to the Debtors of the intended disposition of the collateral.

This leaves for consideration the next logical question: Does Barnett's non-compliance with the notification requirement of the Statute disallow Barnett's deficiency claim? Persuasive authority supports the proposition that when the secured party disposes of the collateral in a commercially unreasonable manner, there is a rebuttable presumption that the fair market value of the collateral at the time of the repossession is equal to the outstanding balance due on the contract. In order to rebut this presumption, it is the secured party's burden to present competent proof that the fair market value of the collateral was less than the outstanding balance. If the secured party meets this burden, it may recover a deficiency judgment in "an amount equal to the total amount of debt minus the fair market value of the collateral as ultimately determined." *Weiner v. American Petrofina Mktg., Inc.*, 482 So.2d 1362, 1365 (Fla.1986); *Landmark First Nat'l Bank v. Gepetto's Tale O' the Whale, Inc.*, 498 So.2d 920, 922 (Fla.1986) (adopting *Norton v. National Bank of Commerce*, 240 Ark. 143, 398 S.W.2d 538 (1966)).

Barnett presented no evidence that the fair market value of the yacht was less than the amount of the debt owed to Barnett. According to the Listing Summary Report published by Allied Marina, a Hatteras dealer located in Ft. Lauderdale, this yacht was listed for sale in the amount of $135,000.00. Other yachts of the same make ranged in price from as high as $295,000.00 to as low as $115,000.00. (Debtor's Exh. 3). According to the appraiser, a Marine Surveyor, the yacht had a fair market value of at least $145,000.00. (Debtor's Exh. 2).

Barnett suggests that the yacht was actually sold by the Debtors, thus the lack of notification was of no consequence. While it is true that the Debtors initially listed for sale the yacht at Allied Marina, the sales person at Allied Marina was contacted by a representative of Barnett who took over the liquidation of the yacht at that point. Moreover, Barnett in its own Amended Proof of Claim # 44 clearly admitted that the "Debtors voluntarily relinquished" the yacht to Barnett.

Based on the foregoing, this Court is satisfied that Barnett did not liquidate the collateral in a commercially reasonable manner.

**256**

Furthermore, it offered no competent proof in rebuttal to the presumption and, thus, Barnett is not entitled to assert a deficiency claim against the Debtors.

Accordingly it is

**ORDERED, ADJUDGED AND DE-CREED** that the Debtor's Objection to Claim # 17/Barnett Bank of Naples as amended by the Proof of Claim # 44, be and the same is hereby, sustained.

It is further

**ORDERED ADJUDGED DECREED** that the unsecured claims of Barnett # 17 and # 44 be, and the same are hereby, disallowed.