GAZETTE PUBLISHING COMPANY *v.* COLE.

Opinion delivered June 2, 1924.

PRINCIPAL AND SURETY—RELEASE OF SURETY.—Sureties on a bond which guaranteed payment by a partnership of any sums due by such firm are released where there is a change in the personnel of the firm or where, according to the terms of the bond, one of the sureties gave timely notice of his desire to be released therefrom.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris,* Judge; affirmed.

*Sam T. & Tom Poe,* and *Louis Tarlowski,* for appellant.

The sale by Smith of his interest in the agency without giving thirty days' notice of his intention to sell, was a breach of the contract of agency, and fixed the liability of the sureties by virtue of their agreement to be responsible for any loss or damage sustained by appellant on account of "any violation of the above agreement on the part of H. N. Owens and R. A. Smith." 32 Cyc. 83; 226 Fed. 653, 661; 224 U. S. 376; 65 N. W. 796; 221 S. W. 699, 701; 68 S. W. 942; 169 Pac. 130; 48 N. W. 194; *Id.* 416; 44 Pac. 442; 59 Pac. 342, 245.

*R. W. Robins,* for appellee.

This court has always adhered to the rule that any material alteration in the terms of such a contract discharges the surety, if he has not consented to the change, and releases him even though the alteration be for his benefit. 65 Ark. 550; 73 Ark. 473; 74 Ark. 600; 93 Ark. 472; 113 Ark. 429; 122 Ark. 522. The general rule as to the liability of a surety or guarantor of joint principals

is aptly stated in 32 Cyc. p. 82, as follows: "A surety of joint principals is not liable for one of them acting independently, or when changes are made in the membership of the firm, or by dissolution thereof, notwithstanding the obligee is not aware of the dissolution." See also 7 T. R. 254; 3 East 484; 4 Russ. Chy. 154; 50 Ont. Rep. 189; 16 Johns 100; 3 Texas 199; 39 Neb. 123; 69 Atl. 209; 1 Brandt on Suretyship, § 134; 21 R. C. L. 1061; Spencer on Suretyship, § 198; 5 Mees. & W. 571; 148 Ill. 453 34; L. R. A. 861. So, it appears that the rule is well established that the withdrawal of one member of a firm, *with or without* the knowledge of the obligee, will release a surety or guarantor of the firm.

SMITH, J. Appellant, hereinafter referred to as the company, is engaged in publishing the *Arkansas Gazette,* a daily newspaper, and on December 30, 1920, appointed H. N. Owen and R. A. Smith, who were partners as Owen & Smith, as its agents for the distribution and sale of the Gazette in the city of Conway. A surety bond was exacted of Owen & Smith, which guaranteed the prompt payment of any and all sums of money due the company by its said agents, which was signed by W. D. Cole, C. H. Newbern and Howard A. Terry as sureties. By the contract of agency Owen & Smith agreed to use their earnest endeavor to create and establish a regular sale and demand for the Gazette, and that, prior to giving up the business, they would endeavor to secure a successor, and would give the company thirty days' notice of such intention.

The bond signed by the sureties, which was in the sum of $500, contained the following provision: "We further agree to be responsible individually and jointly for any loss or damages sustained by the Gazette Publishing Company on account of any violation of the above agreement on the part of said H. N. Owen and R. A. Smith, and that we will give the Gazette Publishing Company thirty days' notice in writing should we at any time elect to terminate this contract or wish to be relieved on this bond."

Pursuant to this contract, the company began furnishing papers to Owen & Smith on January 1, 1921, and on January 8 Smith sold his interest in the agency to J. F. Caldwell. At the time this was done Smith was sent by the company to Forrest City and put in charge of the agency for the company in that city.

Owen & Caldwell operated the agency for a short time, when Caldwell was removed, and one O'Brien was substituted, and this appears to have been done by the State subscription agent for the company.

Smith had been employed by Terry, one of the sureties, before accepting this agency as a partner of Owen, and, upon retiring from the partnership, Smith notified Terry that he had done so, and Terry immediately wrote the company, asking to be relieved from the surety bond.

The company admitted that this letter was received in due course, and, on January 11, it prepared for execution a new bond to be executed by sureties for the new partnership of Owen & Caldwell, but this bond was never executed. The company's superintendent of agencies testified that he did not press the execution of the new bond, as he assumed that it was satisfactory with the sureties for the new partnership to continue the agency. The only reason given for this assumption was that he had heard nothing to the contrary from them. Cole and Newbern, the other sureties, both testified that they had no notice or information of any change in the firm until they were sued as sureties on the bond of Owen & Smith.

Upon the trial judgment was rendered in favor of the sureties, and the company has appealed.

By the terms of the contract all bills were payable on the 15th of each month for the papers furnished during the preceding month, and on the 8th of January, when Smith retired from the firm, the amount then due for papers furnished was $91, and on February 11 a payment of $190 was made on this account.

The court gave, over the objection of the company, an instruction numbered 2, which reads as follows: "You

are instructed that, if you find from the evidence that Smith, with or without the knowledge of the plaintiff, withdrew from the firm of Smith & Owen and sold out his interest in the agency to another party, then the defendants would not be liable for any default after this occurred; and if you find that the account up to that time has been paid, then your verdict will be for the defendants.''

A discussion of this instruction will dispose of the questions of law involved in the case, as it in effect directed a verdict in favor of the sureties. The instructions asked by the company were also of a peremptory character and would, if given, have directed a verdict in its favor.

It may be said, in the first place, that it is undisputed that the company knew that Smith had retired from the partnership, and it is therefore unimportant that the instruction told the jury that, if this was done with or without the knowledge of the company, the sureties would not be liable for any default which occurred thereafter. The company had this knowledge, and it is unnecessary therefore to consider what difference, if any, would exist in the relation and obligation of the parties if this change had been known to the sureties and unknown to the company. Moreover, as we have said, the sureties, Cole and Newbern, testified that they had no notice or information concerning the change.

It may also be said that no objection was made to this instruction on the ground that it made an application of the payments to the oldest items of the account. This, however, would have been the effect of any payments made on the account, in the absence of a direction or agreement as to its application, and the first remittance was more than enough to pay the balance due when Smith retired, or to pay the sum due on January 15, when the first remittance should have been made.

Here two things occurred: (1) The personnel of the partnership changed by the retirement of one part-

ner and the introduction of a new one, and this appears not only to have been known to, but to have been done by, the company itself. (2) One of the sureties gave notice to the company on January 8 of his withdrawal from the bond, and this was done pursuant to the provisions of the bond, which gave the surety the right so to do.

Either of these events would ordinarily suffice to release the sureties, because the effect of each was to materially alter the contract of suretyship. It is true, the obligation signed by the sureties required a notice of thirty days before the release of the surety who asked to be released became effective, and it may be true that, until the expiration of the thirty days, the surety was liable for the papers furnished during that time, if they were not otherwise discharged from liability, and it is true that papers were furnished during this period for which the company has not been paid.

This is unimportant, however, for the reason that the personnel of the partnership changed on January 8 by the retirement of Smith, and this change operated to release the sureties, and, as we have said, the testimony shows that the payment on account made on February 11 was sufficiently large to extinguish the sum due on January 8.

At § 104 of the chapter on Principal and Surety, in 21 R. C. L., page 1061, it is said: "The rule that any material change in the obligation, whether prejudicial to the surety or not, will discharge him from liability, has been very generally applied by the courts in cases where there has been a release or change of principals. If a surety engages for an individual, the engagement is understood to extend to the acts of that individual alone, and will not continue if he takes in a partner; in other words, the surety for a single individual is not liable for a partnership of which such individual is a member. So a surety who guarantees that a firm composed of particular individuals will do certain acts or

discharge certain duties cannot be held liable where there is a change in the firm, although the firm name is not changed, and although the obligee is not aware of the change. As the surety's liability is *strictissimi juris,* and cannot be extended by construction, his guaranty to a partnership is extinguished if any partner is taken into, or retires from, the partnership, unless it appears from the terms of the instrument that the parties intended the guaranty to be a continuing one without reference to the composition of the firm. A party may be induced to become surety for the individuals who compose a firm because of his confidence in their integrity, prudence, accuracy, and ability as business men; but he cannot be presumed to have intended to become responsible for the possession of such qualities by some third person, who may be afterwards taken into the firm without his knowledge or consent, or for the retention of such qualities to the same degree by the firm after the retirement of one of its members. This principle has been applied where a partnership was a principal to the obligation, and it was dissolved by the death of a member of the firm.''

The notes to the text quoted cite a number of annotated cases, which collect numerous cases fully supporting the text quoted.

A similar statement of the law appears in 1 Brandt on Suretyship, § 134, and Spencer on Suretyship, § 198.

A number of cases, both American and English, are cited in appellees' brief which fully support the rule announced in R. C. L., *supra.*

The following cases by this court are also in point: *Southwestern Surety Ins. Co.* v. *Terry,* 122 Ark. 522; *Snodgrass* v. *Shader,* 113 Ark. 429; *Berman* v. *Shelby,* 93 Ark. 472; *Singer Mfg. Co.* v. *Boyette,* 74 Ark. 600; *Lawhon* v. *Toors,* 73 Ark. 473; *O'Neal* v. *Kelley,* 65 Ark. 550.

It is finally insisted that the company should be allowed to recover damages for the breach of the contract. Several answers might be made to this conten-

tion. One is that, if there was a breach, the company was privy to it, in fact had committed it by taking Smith away from the partnership and sending him to Forrest City. A second answer is that the suit was not brought to recover damages, but the sum alleged to be due under a contract.

It follows that no error was committed in giving the instruction set out above, and it appears from the undisputed evidence that the defendant sureties were entitled to a directed verdict, and, this being true, it would be unimportant if the instructions were in fact erroneous, as the jury found in appellees' favor. The judgment is affirmed.