**UNITED STATES of America; and James Abdnor, Administrator, United States Small Business Administration, Appellees,**

v.

**Margaret Ann DAWSON, Successor Trustee of the Henry M. Dial Estate Trust; Ancil E. Trucks; and, Charlotte L. Trucks, Appellants.**

**Simmons First National Bank of Pine Bluff; Weyerhaeuser Company.**

No. 90–1863.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 1, 1990.

Decided April 10, 1991.

Rehearing Denied April 11, 1991.

John Harris Jones, Pine Bluff, Ark., for appellants.

Floyd Mac Dodson, Little Rock, Ark., for appellees.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

## AMENDED JUDGMENT [1]

LAY, Chief Judge.

Margaret Ann Dawson appeals from the district court's order granting summary judgment in favor of the Small Business Administration ("SBA") and denying her motion for summary judgment. On appeal, Dawson argues *in rem* foreclosure of the mortgage she executed to guarantee her brother's promissory note is barred because of lack of notice of the sale of the debtor's collateral. We agree and reverse the judgment of the district court.

## BACKGROUND

On December 22, 1982, Henry C. Dial executed and delivered to the National Bank of Commerce ("Bank") a promissory note in the original principal amount of $50,000, bearing interest at the rate of fourteen percent per annum. The note was secured by the inventory and fixtures of Dial's Hardware. Dial's sister, Margaret Ann Dawson, an accommodation guarantor of her brother, executed and delivered to the Bank a mortgage on real property located in Jefferson County, Arkansas to secure payment of the note. On July 1, 1983, Dial, the Bank, and Sam H. Stephens signed an Agreement for Assumption of Indebtedness ("Agreement") that provided that Stephens would assume all of the liabilities and obligations under the terms of the promissory note in exchange for the assets of Dial's Hardware. The Agreement provided, however, that Dial was not relieved of his personal liability to the Bank on the debt. Dial died on November 20, 1983, but the Bank never filed a claim against his estate. In April, 1986, Sam Stephens filed a bankruptcy petition and subsequently was discharged. The hardware store assets that secured the note assumed by Stephens were sold at a public auction for $16,249.71, and the proceeds were applied to the loan balance. The proceeds did not cover the entire amount of the remaining debt. Dawson never received notice of the auction and sale of the store assets.

In August, 1986, the Bank assigned the promissory note and Dawson's mortgage to the SBA. The SBA brought this action against Dawson, the guarantor, for *in rem* foreclosure of the mortgage originally pledged to the bank as security for the note. The SBA sought to pay off the remaining balance of the debt, which equalled $18,252.12 plus interest. Dawson

---

1. Our opinion of December 21, 1990, is ordered vacated; this amended opinion becomes effective upon its filing.

counterclaimed for release of the mortgage as a cloud on her title. The district court granted summary judgment in favor of the SBA and denied Dawson's motion for summary judgment. On appeal, Dawson argues as a complete defense to the action that (1) she was discharged by a material alteration in the obligation secured, (2) the Arkansas statute of nonclaim barred an *in rem* judgment by the SBA against the collateral, and (3) the SBA was not entitled to foreclose on the mortgage securing the note because she was not given notice of the sale of the principal collateral.

We reject Dawson's claim on her first and second defenses. We agree, however, with her argument regarding lack of notice.

*Material Alteration*

■ Under Arkansas law, a material alteration in an obligation assumed without the consent of the guarantor will discharge the guarantor's obligation. *Moore v. First Nat'l Bank of Hot Springs,* 3 Ark.App. 146, 150–51, 623 S.W.2d 530, 533 (1981). An alteration is material, however, only if "the guarantor is placed in the position of being required to do more than his original undertaking." *Continental Ozark, Inc. v. Lair,* 29 Ark.App. 25, 29, 779 S.W.2d 187, 189 (1989).

■ Dawson asserts that Stephens's assumption of obligations and liabilities under the note constituted a material alteration in the note. We disagree. The assumption agreement stated that Dial remained liable under the terms of the note. No provision of the note or mortgage was altered.[2]

*Statute of Nonclaim*

■ Dawson also contends that the SBA may not foreclose on the mortgage securing the promissory note because no claim was filed against the estate of Dial

within six months after publication of notice to creditors. Ark.Code Ann. § 28–50–101 (Supp.1989). She asserts that the note and the mortgage are inseparable under Arkansas law. We believe this argument is unsound.

Arkansas applies the general rule that a secured creditor retains the right to enforce a lien against real or personal property pledged as collateral, notwithstanding the creditor's failure to file a probable claim against the debtor's estate within the nonclaim limitations period. *Moore v. Moore,* 21 Ark.App. 165, 171–72, 731 S.W.2d 215, 219 (1987). In *England v. Spiller,* 128 Ark. 31, 33–34, 193 S.W. 86, 87 (1917), the Arkansas Supreme Court recognized that a secured creditor generally has the choice of filing a probate claim or relying on his security. The court stated that "if ... [a creditor] prefers to collect ... [his claim] within the period of administration he will probate it. If the security is ample and he prefers the interest, he can let the claim run and foreclose his lien, as he could do if the obligor had not died." *Id.* (quoting *Rhodes v. Cannon,* 112 Ark. 6, 13, 164 S.W. 752, 754 (1914)). In the present case, the SBA apparently considered the mortgaged property adequate security and therefore did not file a claim against Dial's estate within the nonclaim limitations period.

*Guarantor's Collateral*

■ Dawson argues the SBA may not foreclose on the mortgage securing the note because the SBA failed to give her notice of the time and place of the sale of the principal collateral, the hardware store assets. We agree.

Section 4–9–504(3) of the Arkansas Commercial Code provides:

Unless collateral is perishable or threatens to decline speedily in value or is of a

---

**2.** Dawson's reliance on *Gazette Publishing Co. v. Cole,* 164 Ark. 542, 262 S.W. 985 (1924), is misplaced. In *Gazette Publishing Co.,* the court held a surety contract may be altered when a partnership adds a partner because a surety presumably does not intend to become liable for the acts of unknown persons. *Id.* 262 S.W. at 987; *cf. Continental Ozark,* 779 S.W.2d at 189

(recognizing that sale of an interest or change in ownership of a corporation may not operate to extinguish a guarantor's obligation). Although in the present case the SBA was prohibited from enforcing the note against Stephens because of his discharge in bankruptcy, Dial's obligation on the note remained unchanged.

type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.

Ark.Stat.Ann. § 4–9–504(3) (1987). "Debtor" is defined as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral." Ark.Stat. Ann. § 4–9–105(1)(d) (1987). The Arkansas Supreme Court has held that *a guarantor of a secured obligation is a "debtor" for purposes of the notice rule* because a guarantor "is responsible for payment upon default of the principal obligor." *Hallmark Cards, Inc. v. Peevy*, 293 Ark. 594, 598, 739 S.W.2d 691, 693 (1987). Thus, a guarantor " 'owes payment or other performance of the obligation secured.' " *First Nat'l Bank of Wynne v. Hess*, 23 Ark.App. 129, 132, 743 S.W.2d 825, 827 (1988) (quoting Ark.Stat.Ann. § 4–9–105(1)(d)). The notice rule allows a debtor "to challenge a proposed disposition before it is made" and gives the debtor "the opportunity to find interested buyers for the collateral." 1A P. Coogan, W. Hogan, D. Vagts, J. McDonnell, *Secured Transactions Under the Uniform Commercial Code*, § 8.06(2) (1990). If a creditor complies with the notice requirement, a debtor can "maximize the sale price of the collateral and, thus, minimize any deficiency for which he [or she] will be liable." *Rushton v. Shea*, 423 F.Supp. 468, 469–70 (D.Del.1976).

In 1987, the Arkansas Supreme Court overruled earlier decisions that permitted a secured party who failed to comply with the notice requirement to recover a deficiency upon overcoming the presumption that the collateral was worth as much as the amount of the obligation. *First State Bank of Morrilton v. Hallett*, 291 Ark. 37, 39–40, 722 S.W.2d 555, 556 (1987), *overruling, Norton v. National Bank of Commerce*, 240 Ark. 143, 398 S.W.2d 538 (1966). The *Hallett* court held that a creditor must comply with the notice requirement to obtain a deficiency judgment. *Id.* 722 S.W.2d

at 556. The court further held that failure to give proper notice to a debtor bars a secured party from recovering a deficiency judgment for the balance still outstanding. *Id.* 722 S.W.2d at 557; *see also Hallmark Cards, Inc.*, 739 S.W.2d at 694 (holding that a secured party who fails to give a debtor notice of the sale of collateral is barred from recovering any deficiency between the sale price and the amount of the debt).

■ Notwithstanding its failure to comply with section 4–9–504(3), the SBA argues that it is not barred from foreclosing on the mortgage securing the promissory note because it is not seeking to collect a deficiency through a personal judgment. The SBA reasons that there cannot be a deficiency until all the collateral securing the note has been liquidated, *including* the real estate collateral securing the promissory note. This argument overlooks the primary distinction which the law makes between the primary debtor and the guarantor. It is well-settled that the guarantor is only secondarily liable, and then only on proof of default by the original debtor. *Cf. First American Nat'l Bank v. Coffey-Clifton*, 276 Ark. 250, 251–52, 633 S.W.2d 704, 705 (1982); *Bass v. Service Supply Co.*, 25 Ark.App. 273, 275–76, 757 S.W.2d 189, 190 (1988).

The Arkansas appellate courts have never confronted the issue of whether a secured party who fails to provide a guarantor with notice of the sale of the debtor's collateral is barred from foreclosing on the guarantor's real estate pledged as collateral. We conclude that Arkansas law would not allow a secured party, who fails to notify a guarantor prior to the sale of the debtor's collateral, to proceed by *in rem* foreclosure of the guarantor's real estate pledged as collateral.

*United States v. Kennedy*, 256 Ga. 345, 348 S.E.2d 636 (1986), although involving Georgia law, is directly on point. The *Kennedy* court held that a creditor who fails to give a guarantor notice of the sale of the

principal collateral is barred from foreclosing on the guarantor's real property pledged as collateral.[3] The court recognized that a guarantor's interest in ensuring that the sale of the debtor's collateral is conducted fairly "is the same whether his [or her] own property which is subject to suit on the deficiency is personalty or realty." *Id.* 348 S.E.2d at 637; *see also Connecticut Bank and Trust Co. v. Incendy,* 207 Conn. 15, 540 A.2d 32, 37–38 (1988) (bar against deficiency judgment and foreclosure of real estate mortgage upon failing to give notice under the U.C.C.).

Because Dawson is responsible for payment upon the debtor's default as a guarantor, she is interested in maximizing the sale price of the hardware store assets and minimizing any deficiency for which she could be liable. This interest is not protected unless the secured party gives her notice of the sale of the assets securing the note. This reasoning is followed in other jurisdictions. As Justice Pederson of the North Dakota Supreme Court stated: "A debtor, upon receiving proper notice [of a sale of collateral], might be able to attract additional interested persons to bid up the price of these goods, or he might attend ... [the auction] and bid at the auction. Thus, the failure to give the debtor notice might very well result in prejudice to him." *State Bank of Towner v. Hansen,* 302 N.W.2d 760, 765 (N.D.1981).

 SBA, however, argues the Arkansas Commercial Code is not applicable because it is seeking an *in rem* judgment against Dawson's real estate. SBA contends that Arkansas' Commercial Code applies to transactions in goods and does not apply

"to the creation or transfer of an interest in or lien on real estate." Ark.Code Ann. § 4–9–104(j) (1987). However, SBA's argument overlooks the fact that the lack of notice to all "debtors," which includes Dawson, related to the sale of personalty of the original debtor.

Section 4–9–501(4) of the Arkansas Commercial Code provides:

> If the security agreement covers both real and personal property, the secured party may proceed under this part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this part do not apply.

Ark.Stat.Ann. § 4–9–501(4) (1987). Under subsection (4), a secured party with a security interest in both real and personal property may proceed against all collateral in a single action as long as he or she acts in accordance with the relevant real property law. This subsection, however, does not prevent a secured party from commencing separate actions against the real property collateral and the personal property collateral. A secured party who chooses to bring separate actions is subject to the Arkansas Commercial Code with respect to the personal property pledged as collateral. *See State Bank of Towner,* 302 N.W.2d at 764. Section 4–9–501(1) of the Arkansas Commercial Code provides in relevant part:

> When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) those provided in the security agree-

---

**3.** In *Emmons v. Burkett,* 256 Ga. 855, 858–59, 353 S.E.2d 908, 911 (1987), the Georgia Supreme Court abrogated the "absolute-bar" rule of *Kennedy* and adopted a "rebuttable presumption" rule, which states that a secured creditor may maintain an action against a debtor or guarantor only if he or she overcomes the presumption that the value of the collateral sold is equal to the secured indebtedness. The holding in *Kennedy,* however, is still partially viable. *See Contestabile v. Business Dev. Corp. of Georgia,* 259 Ga. 783, 387 S.E.2d 137 (1990). *Emmons* indi-

cated that a secured party who failed to give notice to a guarantor could recover against the guarantor's real property collateral only if it presents evidence that the fair and reasonable value of the collateral sold is less than the debt. As we previously have discussed, Arkansas law no longer applies the rebuttable presumption rule and under the present law, upon a showing of lack of notice in the sale of the debtor's collateral, Arkansas bars any further recovery against the debtor. *See Hallett,* 722 S.W.2d at 557.

ment.[4]

Ark.Stat.Ann. § 4–9–501(1) (1987).

In the present case, the SBA chose to commence separate actions against the personal property collateral (the hardware store assets) and the real property collateral of the guarantor. Consequently, the SBA was required to act in accordance with the Arkansas Commercial Code with respect to the personal property collateral. Under section 4–9–504(3), the SBA was obligated to send Dawson notice prior to the sale of the hardware store assets. Dawson's interest in ascertaining that the sale of collateral is conducted fairly does not vary depending upon the nature of her property (personalty or real estate) which is subject to suit in the event the collateral fails to satisfy the indebtedness. *See Kennedy,* 348 S.E.2d at 637. Because the SBA failed to comply with the notice requirement, the SBA is barred from foreclosing on the mortgage securing the promissory note.

The judgment of the district court is reversed.

---

**4.** Subsection 3(b) of section 4–9–501 includes as a limitation the notice requirement of section 4–9–504(3), which states in pertinent part that a secured party must send to a debtor reasonable notification of the time and place of any public sale. Ark.Stat.Ann. §§ 4–9–501(3)(b), 4–9–504(3) (1987).