976 So.2d 85 (2008)
Purnima SHETH, Appellant,
v.
C.C. ALTAMONTE JOINT VENTURE, et al., Appellees.
No. 5D07-1094.
District Court of Appeal of Florida, Fifth District.
February 22, 2008.
Purnima Sheth, B.D.S., Longwood, pro se.
Robert W. Thielhelm, Jr., and Brian C. Blair of Baker & Hostetler LLP, Orlando, for Appellee.
PLEUS, J.
Dr. Purnima Sheth appeals a final judgment finding that she was liable to C.C. Altamonte Joint Venture ("AJV") under a guaranty agreement signed in 1994 as part of a lease. Dr. Sheth argues that under the unique facts of this case, her liability as guarantor should have terminated as a matter of law. We agree and reverse.
Dr. Sheth and her husband, Dr. Jiten Sheth, practiced dentistry together at Oracare Dental, P.A. ("Oracare"). In 1994, Oracare signed a lease with AJV for office space. Along with the lease, the Sheths signed a guaranty agreement, which provided:
For value received, and in consideration of the execution of a certain Lease . . . and for the purpose of inducing Landlord to enter into such Lease, the undersigned, jointly and severally, do hereby absolutely and unconditionally guarantee to Landlord, its successors and assigns, the full and prompt payment when due, of all rents, charges and additional sums coming due under said Lease, together with the performance of all damages that may arise or be incurred by Landlord in consequence of Tenant's failure to perform such covenants and agreements . . . and the undersigned further agree to pay all expenses, including attorneys' fees and legal expenses, paid or incurred by Landlord in endeavoring to collect or enforce the Liabilities or any part thereof and in enforcing this guaranty.
. . . .

Landlord may, from time to time, without notice to the undersigned: . . . (c) extend or renew for any period (whether *87 or not longer than the original period), alter or exchange said Lease or any of the Liabilities,. . . . No such action or failure to act by Landlord shall affect the undersigned's liability hereunder in any manner whatsoever. . . .
The undersigned hereby expressly waive: (a) notice of the acceptance of this Guaranty; (b) notice of the existence, creation, amount, modification, amendment, alteration or extension of the Lease or all or any of the Liabilities, whether or not such notice is required to be given to Tenant under the terms of the Lease. . . .
(Emphasis added).
In 1996, the Sheths separated and filed for dissolution of marriage. During the dissolution proceedings, a restraining order was issued, Dr. Sheth was ordered to relinquish all interest in the business, and she began her own practice, leaving her former husband to operate Oracare.
Seven years later, in 2003, Oracare and AJV extended the lease for an additional ten years:
[S]aid Lease Term is hereby extended for ten (10) years commencing April 1, 2004. . . . Further, all terms, covenants and conditions applicable to the Lease Term will be equally applicable to the Extended Lease Term.
Because Dr. Sheth was no longer affiliated with Oracare, her former husband asked that her name be removed from the lease. Dr. Sheth's name was removed from the lease, but AJV refused to remove her name from the guaranty agreement. Reflecting this, the extension provided:
6. Name Removal.

Notwithstanding anything in the Lease to the contrary, Landlord and Tenant agree that the name "Purnima J. Sheth" shall be removed from the 12th line of Section 2.3, however the name Purnima J. Sheth D.D.S. shall not be removed from the Guaranty.
In October 2004, Oracare stopped paying rent due to purported problems with the roof. AJV sued Oracare for eviction and damages attributable to its failure to pay rent. Count IV of AJV's complaint was against Dr. Sheth for her liability under the guaranty agreement. In the dissolution proceedings, the court ordered that because her former husband had failed to have Dr. Sheth's name removed from the guaranty, he should indemnify Dr. Sheth for any damages resulting from the lease extension and this suit.
After trial on the guarantee agreement, the trial court determined Dr. Sheth was liable as guarantor because she waived notice of modification, amendment, alteration, or extension of the lease; at no time did she personally ask that her name be removed from the guaranty agreement; her former husband signed the portion of the lease extension stating that her name was not to be removed from the guaranty agreement; AJV was not responsible for making sure that Dr. Sheth's name was removed; and, although the dissolution court held that Dr. Sheth's former husband was required to indemnify her for any damages resulting from this suit, that order had no bearing on Dr. Sheth's liability to AJV under the guaranty agreement. This appeal followed.
Because the intention of the parties as evidenced by a contract is a question of law, this Court's standard of review is de novo. Southern Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 319 (Fla. 2005); Berry v. Berry, 550 So.2d 1125, 1126 (Fla. 3d DCA 1989). Under Florida law, a guaranty for a lease can be continuing, but it must expressly state that it is intended to cover future transactions for the guarantor to be liable for extensions and renewals. See Zero Food Storage, *88 Inc. v. Udell, 163 So.2d 303 (Fla. 3d DCA 1964).
The law of Florida has recognized that a contract of guaranty may be continuing in nature. It is said to be continuing in nature if it contemplates a future course of dealing during an indefinite period, or if it is intended to cover a series of transactions or succession of credits, or if its purpose is to give to the principal-debtor a standing credit to be used by it from time to time. Thus, a continuing guaranty covers all transactions, including those arising in the future, which are within the description of contemplation of the agreement.
Fidelity Nat. Bank of South Miami v. Melo, 366 So.2d 1218, 1221 (Fla. 3d DCA 1979). The guaranty agreement endorsed by Dr. Sheth was a continuing guaranty. It states that Dr. Sheth and her former husband unconditionally guarantee the payment of all liabilities under the lease, that the lease can be extended or renewed at any time by the AJV, and that Dr. Sheth and her former husband expressly waive any notice of such alterations to the terms of the lease.
However, this case presents an exception to the general rule of continuing guarantees because the composition of the obligor, Oracare, was fundamentally changed when the Sheths divorced and Dr. Sheth was ordered to leave the practice.
[A]fter a guarantee is given, a change in the obligor from a sole proprietorship to a partnership releases the guarantor unless it appears that the parties to the contract of guarantee intended the contract to be without reference to the composition of the firm. . . . [R]elease is based on the theory that a change in the obligation by the substitution of new persons has the effect of making a contract on which the guarantor never intended to become liable.

Powell Mfg. Co., Inc., v. Allbritton, 513 So.2d 1348, 1349 (Fla. 1st DCA 1987) (emphasis added). Nothing in the instant guaranty agreement suggests that the liability would continue without regard to the composition of Oracare. In this case, AJV knew that Dr. Sheth signed the guaranty agreement because she was part of Oracare and needed to secure a lease for her business. AJV released Dr. Sheth from the lease because it understood that she had no further interest in Oracare, but sought to bind her as guaranty to a lease extension in which she had absolutely no interest. In so doing, AJV did expressly what the theory adopted in Powell Manufacturing was supposed to prevent  it "ma[de] a contract on which the guarantor never intended to become liable." 513 So.2d at 1349.
Applying the exception in Powell Manufacturing requires consideration of several factors. First, the obligee's lack of knowledge of a change in the obligor's business is a factor for whether or not the guarantor should be released. Change in Name, Location, Composition, or Structure of Obligor Commercial Enterprise Subsequent to Execution of Guaranty or Surety Agreement as Affecting Liability of Guarantor or Surety to the Obligee, 69 A.L.R.3d 567, § 4 (2007). In this case, had AJV been unaware that Dr. Sheth was no longer involved in Oracare, this factor would suggest that she should still be bound. However, AJV, as obligee in this case, not only knew that Dr. Sheth no longer had an interest in Oracare, AJV acknowledged that fact by removing her name from the lease. In cases where the obligee had notice of the change in the obligor business before the transaction or default for which the guarantor is sought to be held liable, courts have generally released the guarantor from liability. 69 A.L.R.3d 567 n. 25 (citing Gazette Pub. Co. v. Cole, 164 Ark. *89 542, 262 S.W. 985 (1924); Friendly v. Nat. Surety Co., 46 Wash. 71, 89 P. 177 (1907)).
Second, the nature of the change of the obligor business is a significant factor. 69 A.L.R.3d 567 at § 5. For example, if the business continued with the same people in charge, same operating structure, same location, but merely changed in form  such as a name change  then the guarantor would still be liable. Id. See also, United Bonding Ins. Co. v. Southeast Reg'l Builders, Inc., 236 So.2d 460, 463-64 (Fla. 1st DCA 1970) (holding that the guarantor was still liable because even though the "business changed from a partnership to a corporation, the terms and provisions of the contract never changed and the same persons performed the work under the contract"). In the instant case, the change in the obligor, Oracare, is much more than a simple formalistic change  Dr. Sheth was no longer part of the professional association. This factor suggests that Dr. Sheth should not be held liable.
Third, a court should consider whether the guarantor participated in the change in the obligor business. 69 A.L.R.3d 567 at § 6. This is an estoppel argument. The idea is that if a guarantor participated in changing a business, that guarantor is estopped from later arguing that the change released her liability. Frell v. Dumont-Florida, Inc., 114 So.2d 311, 312-13 (Fla. 3d DCA 1959). In this case, Dr. Sheth did not voluntarily participate in any change in the business that would preclude her reliance on that change for liability release. Instead, Dr. Sheth was ordered to walk away from the business and did so.
The fourth factor is whether the guarantor sought to revoke the guaranty. 69 A.L.R.3d 567 at § 7. In Frell, the Third District found it significant that the purported guarantor never sought to disclaim responsibility or revoke the guaranty agreement until the time of suit. 114 So.2d at 313. Although no evidence was presented that Dr. Sheth personally asked that her name be removed from the guaranty agreement, her former husband testified that he requested removal of his former wife's name but AJV refused despite his "strict objections." This testimony is bolstered by the fact that the amendment to the lease in 2004 expressly stated:
6. Name Removal.

Notwithstanding anything the Lease to the contrary, Landlord and Tenant agree that the name "Purnima J. Sheth" shall be removed from the 12th line of Section 2.3, however the name Purnima J. Sheth B.D.S. shall not be removed from the Guaranty.
If AJV was unaware that termination of Dr. Sheth's guarantor liability was desired, there would be no reason to include the second half of that clause.
In addition to the above analysis, we find support in Cadle Co. v. Vargas, 55 Mass.App.Ct. 361, 771 N.E.2d 179 (2002), a similar case in which a former wife was released from liability despite signing a continuing guaranty. In Cadle Co., Ms. Vargas was married to a real estate investor and signed guarantees in order to assist her husband in obtaining loans. Id. at 180. After she and her husband divorced, he obtained further loans from the bank with which Ms. Vargas had signed a guaranty. Id. at 181. Despite the fact that she signed a continuing, line-of-credit guaranty, the appellate court found that the equities favored releasing Ms. Vargas from liability because:
[T]he commercial loan on which the plaintiff seeks to recover was executed without Vargas' knowledge and over a year after her divorce, at the time of the 1990 note, BayBank knew that Vargas was divorced form the note maker, BayBank did not rely on the guaranties in granting either the 1989 or the 1990 *90 loans, [and] Vargas received no benefit from the 1990 loan.
Id. at 184 (emphasis added).
Here, as in Cadle Co., the equities favor Dr. Sheth's release. First, AJV extended this lease without Dr. Sheth's knowledge seven years after her separation from her husband. Second, AJV knew the parties were separated and knew that Dr. Sheth had no further interest in the business prior to extending the lease. As noted above, this change has created a situation involving a contract for which Dr. Sheth never intended to be liable. Third, Dr. Sheth received no benefit from the extension of the lease.
Accordingly, we reverse the final judgment and deny AJV's motion for appellate attorney's fees.
REVERSED.
PALMER, C.J. and MONACO, J., concur.